# Cleary v. Commonwealth.

(Decided March 15, 1932.)

LOVEL H. LILES for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for Commonwealth.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN— Affirming.

Appellant was convicted of the offense of malicious shooting with intent to kill, being the offense denounced by section 1166 of the Kentucky Statutes. He was sentenced to serve five years in the penitentiary, and appeals.

The sole ground for reversal argued in appellant's brief is that the verdict is flagrantly against the evidence, in that appellant is guilty only of the offense denounced by section 1242 of the Statutes, being that of shooting in sudden affray. The contention requires a resume of the evidence. On Saturday night, September 13, 1930, appellant and Millard Lewis were attending a party in Fullerton. Lewis seems to have imbibed rather freely, and along about midnight appellant drove him home in an automobile. Appellant contends that, when he got Lewis home, the latter undertook to compel him to take a drink of whisky by threatening him with a pistol, but this trouble seems to have quieted down. Appellant left Lewis at his home and returned to the party, and remained there the rest of the night and early morning. He ate his breakfast about 7 o'clock Sunday morning, and then spent the rest of that morning riding around in his automobile. He claims that, during the course of that morning, he observed that Lewis was also riding around, and, according to appellant, he thought Lewis was following him. Shortly after noon Lewis, riding in an automobile driven by Rinbow, came in from Tygert, where Lewis lived, to Fullerton. As they were riding along, appellant drove his automobile past them. He drove on in to Fullerton and parked. He then got out. Lewis and Rinbow, still riding in their machine, passed appellant as he stood by his parked machine, and, as they did so, he called out and asked them to let him ride down with them. Rinbow was unable to stop his car after being thus hailed until it got about 50 yards further down the road from where appellant's machine was parked. Appellant came up on a trot, and, when he got to the machine in which Lewis and Rinbow were, he said: "By God, if I had to run all the way I wouldn't ask you to let me ride down." According to the commonwealth's witnesses, appellant, on saying this, drew his gun and fired it point blank at Lewis, hitting and wounding him. There is a feeble attempt on the part of the appellant, through the cross-

examination of the commonwealth's witnesses, to show that Lewis made some movement prior to being shot which might have induced appellant to believe that Lewis was going to assault him. But appellant, on cross-examination, really corroborated the commonwealth's witnesses and established by his own testimony that his was a shooting without any justification. After having testified that he stopped the Rinbow car and told them that he wanted to ride, on being asked why he wanted to ride, he said: "I figured he (Lewis) was going to kill me, he had killed two men and I just beat him to it." These questions were then asked appellant, and he made these answers:

"Q. That was the reason you hollered that you wanted him to take you home so you could shoot him? A. Yes, he had been following me around all morning and I was afraid of him.

"Q. He didn't stop until he was 150 feet below your car? A. I don't know how far.

"Q. What is your judgment? A. I—just 75 to 100 yards.

"Q. Had you took the gun out of the car there and went down to Millard Lewis's car for the purpose of shooting him? A. I thought I might just as well as for him shoot me.

"Q. And you went with that intention? A. If I hadn't he would have beat me to it."

It will thus be seen that appellant did not claim that he shot in sudden heat and passion or in a sudden affray or because he was drunk, but because he had formed in his mind the idea that Lewis was going to shoot him, and that he would just beat him to it. No doubt, out of an abundance of caution, the court instructed not only on the offense denounced by section 1166 of the Statutes, but also on the offense denounced by section 1242, and further gave the appellant the benefit of a self-defense instruction. This was all that appellant could possibly ask for. The evidence abundantly supports the finding of the jury that he was guilty of the offense denounced by section 1166 of the Statutes, and, this being true, the judgment entered on its verdict must be, and it is hereby, affirmed.